## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

LAWRENCE H. PARKS )
1661 Crescent Place, N.W., # 508 )
Washington, D.C.  20009 )
)
    and )
)
TIMOTHY L. SIMONS )
1618 Allison Street, N.W. )
Washington, D.C.  20011 )
)
    Plaintiffs, )
) **COMPLAINT**
    v. )
) C.A. No. _____
FEDERAL HOME LOAN BANK )
  OF SAN FRANCISCO )
600 California Street, Suite 300 )
San Francisco, California  94108 )
)
    and )
)
GREG SEIBLY )
600 California Street, Suite 300 )
San Francisco, California  94108 )
)
DWIGHT ALEXANDER )
600 California Street, Suite 300 )
San Francisco, California  94108 )
)
JULIA YOUNG )
600 California Street, Suite 300 )
San Francisco, California  94108 )
)
JOHN F. LUIKART )
c/o Bethany Advisors LLC )
2545 Union Street )
San Francisco, California  94123 )
)
BRIAN M. RILEY )
c/o Mohave State Bank )
1771 McCulloch Boulevard )
Lake Havasu City, Arizona  86403 )

JEFFREY K. BALL                              )
c/o Friendly Hills Bank                      )
16011 Whittier Boulevard                     )
Whittier, California  90603                  )
                                             )
BRADLEY W. BEAL                              )
c/o One Nevada Credit Union                  )
2645 S. Mojave Road                          )
Las Vegas, Nevada 89121                      )
                                             )
CRAIG G. BLUNDEN                             )
c/o Provident Savings Bank                   )
6570 Magnolia Avenue                         )
Riverside, California  92506                 )
                                             )
MARANGAL DOMINGO                             )
c/o First Technology Credit Union            )
1335 Terra Bella Avenue                      )
Mountain View, California  94043             )
                                             )
MELINDA GUZMAN                               )
c/o Melinda Guzman Professional Corp.        )
455 University Avenue, Suite 330             )
Sacramento, California  95825                )
                                             )
SIMONE LAGOMARSINO                           )
c/o Western Bankers Association              )
1301 J Street, Suite 600                     )
Sacramento, California  95814                )
                                             )
KEVIN MURRAY                                 )
c/o Weingart Center Association              )
566 S. San Pedro Street                      )
Los Angeles, California  90013               )
                                             )
ROBERT F. NIELSEN                            )
c/o Shelter Properties, Inc.                 )
380 Linden Street                            )
Reno, Nevada  89502                          )
                                             )
JOAN OPP                                     )
c/o Silicon Valley Bank                      )
3003 Tasman Drive                            )
Santa Clara, California  95054               )

2

JOHN F. ROBINSON                            )
c/o Federal Home Loan Savings               )
  Bank of San Francisco                    )
600 California Street, Suite 300            )
San Francisco, California  94108            )
                                            )
F. DANIEL SICILIANO                         )
c/o Stanford Law School                     )
559 Nathan Abbott Way                       )
Stanford, California  94305                 )
                                            )
SCOTT C. SYPHAX                             )
c/o Nehemiah Companies                      )
640 Bercut Drive, Suite A                   )
Sacramento, California  95811               )
                                            )
JOHN T. WASLEY                              )
c/o Spencer Stuart                          )
10900 Wilshire Boulevard, Suite 800         )
Los Angeles, California  90024              )
                                            )
             Defendants.              )
_____ )

## COMPLAINT

LAWRENCE H. PARKS and TIMOTHY L. SIMONS, by counsel, jointly and severally, hereby move this Court for Judgment in their favor, and against FEDERAL HOME LOAN BANK OF SAN FRANCISCO, GREG SEIBLY, DWIGHT ALEXANDER, JULIA YOUNG, JOHN F. (Jack) LUIKART, BRIAN M. RILEY, JEFFREY K. BALL, BRADLEY W. BEAL, CRAIG G. BLUNDEN, MARANGAL (Marito) DOMINGO, MELINDA GUZMAN, SIMONE LAGOMARSINO, KEVIN MURRAY, ROBERT F. NIELSEN, JOAN OPP, JOHN F. ROBINSON, F. DANIEL SICILIANO, SCOTT C. SYPHAX and JOHN T. WASLEY, jointly and severally, and in support thereof, states as follows:

3

## NATURE OF ACTION

1.      This action states claims for breach of contract and breach of the convenant of good faith and fair dealing.  This action is brought under the common law of the District of Columbia.

## PARTIES

2.      Plaintiff Lawrence H. Parks ("Mr. Parks") is a resident and citizen of the District of Columbia, and all at times relevant hereto, was employed by Federal Home Loan Bank of San Francisco in its Legislative & Regulatory Affairs ("LRA") office in Washington, D.C., as the Senior Vice President, External, Legislative & Regulatory Affairs.  He opened the Washington office for the Federal Home Loan Bank of San Francisco – the first Washington office in the FHLB system -- in 1997.

3.       Plaintiff Timothy L. Simons ("Mr. Simons") is a resident and citizen of the District of Columbia, and all at times relevant hereto, was employed by Federal Home Loan Bank of San Francisco in its LRA office in Washington, D.C. as the Vice President, Legislative & Regulatory Outreach and Compliance.

4.      Defendant Federal Home Loan Bank of San Francisco ("FHLBSF" or "the Bank") one of 11 Federal Home Loan Banks ("FHLBs") across the United States that comprise the Federal Home Loan Bank System – a government sponsored enterprise that is cooperatively owned by depository institutions (banks, credit unions, CDFIs)  that provides liquidity for housing finance, community and economic development.  Each of the 11 FHLBs operates with local autonomy.  FHLBs are regulated by the Federal Housing Finance Agency and overseen by the House Financial Services Committee and the Senate Banking, Housing and Urban Affairs Committee all based in Washington, DC.

5.      Defendant Greg Seibly ("Mr. Seibly") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Seibly was (and is) the President and CEO of FHLBSF, with supervisory authority over Mr. Parks.

6.      Defendant Dwight Alexander is a resident and citizen of the State of California. At all times relevant hereto, Mr. Alexander was employed by Federal Home Loan Bank of San Francisco and was at the time of the elimination of the Washington office an employee of the Legislative & Regulatory Affairs ("LRA") office based in San Francisco.

7.      Defendant Julia Young ("Ms. Young") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Young was employed as an attorney in the Federal Home Loan Bank of San Francisco's General Counsel's office.

8.      Defendant John F. (Jack) Luikart is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Luikart was (and is) the Chairman of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

9.Defendant Brian M. Riley ("Mr. Riley") is a resident and citizen of the State of Arizona.  At all times relevant hereto, Mr. Riley was (and is) the Vice Chairman of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

10.     Defendant Jeffrey K. Ball ("Mr. Ball") is a resident and citizen of the State of California.  Mr. Ball became a member of the Board of Directors of FHLBSF as of January 1, 2018, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

11.    Bradley W. Beal ("Mr. Beal") is a resident and citizen of the State of Nevada.  At all times relevant hereto, Mr. Beal was a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

12.    Craig G. Blunden ("Mr. Blunden") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Blunden was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

13.    Marangal (Marito) Domingo ("Ms. Domingo") is a resident and citizen of the State of California.  At all times relevant hereto, Ms. Domingo was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

14.    Melinda Guzman ("Ms. Guzman") is a resident and citizen of the State of California.  At all times relevant hereto, Ms. Guzman was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

15.    Simone Lagomarsino ("Ms. Lagomarsino") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Lagomarsino was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

16.    Kevin Murray ("Mr. Murray") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Murray was (and is) a Member of the Board of Directors of

FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

17.     Robert F. Nielsen ("Mr. Nielsen") is a resident and citizen of the State of Nevada. At all times relevant hereto, Mr. Nielsen was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

18.     Joan Opp ("Ms. Opp") is a resident and citizen of the State of California.  At all times relevant hereto, Ms. Opp was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

19.     John F. Robinson ("Mr. Robinson") is a resident and citizen of the State of Washington.  At all times relevant hereto, Mr. Robinson was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

20.     F. Daniel Siciliano ("Mr. Siciliano") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Siciliano was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

21.     Scott C. Syphax ("Mr. Syphax") is a resident and citizen of the State of California.  At all times relevant hereto, Mr. Syphax was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

22.     John T. Wasley ("Mr. Wasley") is a resident and citizen of the State of California. At all times relevant hereto, Mr. Wasley was (and is) a Member of the Board of Directors of FHLBSF, with voting rights and decision making authority affecting the LRA division of FHLBSF in Washington, D.C.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over Mr. Parks' and Mr. Simons' claims pursuant to 28 U.S.C. § 1332, diversity of citizenship, and under the common law of the District of Columbia.

24.     The amount in controversy exceeds the jurisdictional minimum amount for this Court.

25.     FHLBSF is present in and conducts business in the District of Columbia, and is subject to the personal jurisdiction of this Court.

26.     The contract at issue (the settlement agreement) was negotiated and signed in the District of Columbia.  The Parties voluntarily agreed to mediation in Washington, D.C.

27.     Under the contract, Mr. Parks and Mr. Simons were to receive funds in the District of Columbia (where Mr. Parks and Mr. Simons both lived and worked), and Mr. Parks and Mr. Simons were to have waived their claims to bring suit against FHLBSF in the District of Columbia.

28.     Under the contract, the Defendants were to deliver funds to the District of Columbia for acceptance by the Plaintiffs in the District of Columbia.

29.     The tortious acts alleged in this Complaint were committed in the District of Columbia.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1332.

31.     Jurisdiction and venue are proper in this Court.

8

## BACKGROUND

32.    Mr. Parks and Mr. Simons were each employed by Defendant Federal Home Loan Bank of San Francisco ("FHLBSF") as, respectively, Senior Vice President, Legislative and Regulatory Affairs, and Vice President, Legislative & Regulatory Outreach and Compliance. Both Mr. Parks and Mr. Simons were employed in Washington, D.C. as a part of FHLBSF's Legislative and Regulatory Affairs office ("LRA").  The LRA division which reported to the CEO of the FHLBSF and to the Board of Directors of the FHLBSF was closed by FHLBSF in September, 2018, eliminating Mr. Parks' and Mr. Simons' positions.

33.    Mr. Parks was the Senior Vice President, External, Legislative and Regulatory Affairs.  In this position, Mr. Parks worked with Congress, the Administration, the Federal Housing Finance Agency, Federal Home Loan Bank of San Francisco member financial institutions, and national housing and community development advocates to shape the future legislative, regulatory, and policy environment in which the Bank operates, develops cutting edge initiatives for the Bank that benefit various constituents of the Bank and lead legislative and regulatory  initiatives that are deemed essential by the Board of Directors and CEO of the Bank.

34.    Prior to joining FHLBSF in 1997, Mr. Parks was Senior Policy Advisor to U.S. Secretary of Commerce Ron Brown, where he oversaw the Economic Development Administration and the Minority Business Development Agency and represented the Secretary on the National Economic Council and the Domestic Policy Council. Previously, Mr. Parks served as the Associate Legislative Counsel/Director at the Mortgage Bankers Association, as Legislative Counsel to Senator Lloyd Bentsen, and as Counsel to the U.S. Senate Committee on Banking, Housing and Urban Affairs, Subcommittee on Housing and Urban Affairs. Mr. Parks earned a B.A. from Temple University and a J.D. from Yale Law School.

35.     Mr. Simons was the Vice President, Legislative and Regulatory Outreach & Compliance.  In this position, Mr. Simons reported directly to Mr. Alexander and assisted Mr. Parks in working with Congress, the Administration, the Federal Housing Finance Agency, member financial institutions, and national housing and community development advocates to shape the future legislative, regulatory, and policy environment in which the Bank operates.

36.     Mr. Simons managed and implemented the Bank's grassroots strategy for policy advancement.

37.     Prior to joining FHLBSF in 2004, Mr. Simons has an extensive background in financial and operational compliance.  Mr. Simons was a member of an elite Cable & Wireless, PLC board established team that transitioned monopolistic business units in the Caribbean and Latin America into successfully competitive business units operating in a global environment. Previously, Mr. Simons worked at KPMG Consulting (BearingPoint) on MBS investor reconciliation and analysis consulting engagements at major financial institutions, mortgage origination system implementations, and on the audit team of the Federal Housing Administration (FHA).  Mr. Simons has also worked at two socially responsible venture capital funds where he led the investment efforts for the establishment of the largest Community Development Financial Institution (CDFI) in the Washington D.C. area.  Mr. Simons has an MBA from the Robert H. Smith School of Business at University of Maryland College Park and he received his undergraduate degree in Accounting from Hampton University.

38.     The LRA team led the Bank's engagement with policy makers and leaders at the federal, state and local levels on public policy and regulatory matters that affect the Bank's ability to execute its mission for the benefit of both the public and its member institutions.  The team includes six areas of focus: Federal Government Relations, State and Local Government

Relations, Regulatory Relations, Public Policy, External Relations/Grassroots, and Compliance.

The LRA division of FHLBSF, in Washington, D.C., was established in 1997, to serve as a

liaison with regulators, and raise awareness of the Bank's mission with key influencers and

lawmakers, such as members of Congress, and the Administration, and other stakeholders whose

constituencies are impacted by the work and policies of FHLBSF and to shape public policy for

the Bank at the regulatory, executive branch and Congressional leaders.  The LRA team has been

recognized by Congress and various Presidential administrations for its exemplary work.

39.      The FHLBSF files disclosures with the Security Exchange Commissions (SEC)

and publicly reports its earnings.   Fourth quarter of 2018, FHLBSF announced that its net

income  was $73 million, compared with net income of $67 million for the fourth quarter of

2017.  The total net income for 2018 operating year was $360 million.  Total assets as of

December 31, 2018 totaled $109.3 billion.   The bank paid an annualized dividend for 2018 of

8.51%.

40.      The LRA unit has in recent years been the source of innovation and brand

building for the FHLB.  The FHLBSF has a significant amount of income for a finite period of

time due to the settlement of litigation with numerous Private Label Mortgage Backed Security

providers.  Due to the significant contraction of private label mortgage backed securities, it

became important to explore other means of revenue for the FHLBSF.  The LRA unit helped the

FHLBSF develop an initiative to deploy is excess capital through purchasing and restructuring

one of the housing GSEs (Fannie Mae or Freddie Mac)  For instance, the LRA unit, in particular

Mr. Simons and Mr. Parks, were instrumental in the development of an innovative approach for

the Federal Home Loan Bank to engage in securitization and assist the U.S. Government in

ending the conservatorship of Fannie Mae and Freddie Mac. In addition, Mr. Simons and Mr.

Parks conceptualized, developed and implemented the Quality Jobs Fund ("QJF") that the Bank is currently in the process of implementing.  Under this initiative, the FHLBSF provides funding to a donor advised fund that funds intermediaries that in turn provide equity or lower cost debt for small businesses that grow quality jobs or training facilities that have tangible quality employment for those completing training.  All of this work was underway in 2018 when Mr. Parks' and Simons' and jobs were eliminated.

41.     In May 2018, Senator Cortes-Masto at a Congressional Reception talked about the LRA team in D.C. and its significance, House Ranking member Maxine Waters provided a resolution at the May 2018 Congressional Reception delineating the success of LRA, and in particular, the work of Mr. Parks and Simons, the award was on behalf of all Congressional Black Caucus members on the Financial Services Committee.  Senator Coons expressed, in June 2018, to Larry Parks his need to rely upon LRA in the upcoming GSE Housing Finance Reform GSE battles.  Senior Treasury officials have expressed the continued need for a co-op structure to be considered for the GSEs through political intelligence gathered by LRA.

42.     On May 25, 2018, FHLBSF's Board of Directors maintains that it approved the closure of FHLBSF's Legislative and Regulatory Affairs ("LRA") office in Washington, D.C.; and the elimination  Mr. Parks' position as the Senior Vice President, External, Legislative & Regulatory Affairs and Mr. Simons' position as the Vice President, Legislative & Regulatory Outreach and Compliance.

43.     On July 12, 2018, the Bank filed a Form 8-K announcing:

> As part of the Federal Home Loan Bank of San Francisco's (Bank) ongoing efforts to
> align and streamline Bank operations and appropriately manage our expenses, the
> Bank has decided to discontinue the current operating structure of its Legislative and
> Regulatory Affairs' division and to close the Washington, D.C. office.

*In connection with these changes, the position of Senior Vice President, External,
Legislative & Regulatory Affairs, held by Lawrence H. Parks, will be eliminated
effective September 1, 2018.*

44.     On July 18, 2018, counsel for Mr. Parks and Mr. Simons sent a draft

Complaint (to be filed in the U.S. District Court for the District of Columbia as both Mr. Parks

and Mr. Simons lived and worked in Washington, DC), and, on July 23, 2018, sent a pre-

litigation demand letter to FHLBSF in which Mr. Parks and Simons alleged four causes of

action against the FHLBSF, the Chief Executive Officer of the Board, the Board of Directors and

two employees:

> (1) Race Discrimination under the D.C. Human Rights Act against FHLBSF;
>
> (2) Aiding and abetting Discrimination under the D.C. Human Rights Act
> against Greg Seibly, and the Members of the Board: specifically, John F.
> (Jack) Luikart, Brian M. Riley, Jeffrey K. Ball, Bradley W. Beal, Craig G.
> Blunden, Marangal (Marito) Domingo, Melinda Guzman, Simone Lagomarsino,
> Kevin Murray, Robert F. Nielsen, Joan Opp, John F. Robinson, F. Daniel
> Siciliano, Scott C. Syphax, and John T. Wasley;
>
> (3) Defamation against two employees - Dwight Alexander and Julia Young (and
> against the FHLBSF as their employer); and
>
> (4) Negligent hiring/supervision of the Chief Executive Officer, Greg Seibly,
> against FHLBSF and its Board of Directors.

45.     Prior to mediation, Mr. Parks and Mr. Simons alleged they were subjected to

FHLBSF policies that had a disparate impact of punishing and eliminating Black Executives

under the DC Human Rights Act and 42 U.S.C. § 1981, and that the Defendants retaliated against

them when they complained about discrimination.

46.     At the request of the Defendants, the Parties entered into voluntary mediation

before The Hon. Alexander Williams, Jr. (Ret.), of the McCammon Group, who a retired Judge

of United States District Court for the District of Maryland.[1]  The selection of a Mediator was

heavily disputed and, ultimately, the Parties agreed to Judge Williams, who was the suggested

and preferred choice of the FHLBSF, the Defendants.

47.     Defendants insisted, as a condition of the mediation, that Mr. Parks and Mr.

Simons agree not to file their Complaint until after the mediation concluded.  Plaintiffs complied

with the request.

48.     After a lengthy day long Mediation, the Parties agreed to allow Judge Williams to

prepare a Mediator's Proposal.  A Mediator's Proposal is a mechanism which allows the

Mediator, based on his experience and evaluation of the claims and defenses presented to

him/her, to provide a valuation of what the Defendants should pay to resolve the claims and what

the Plaintiffs should consider accepting for the claims.  Typically, as one done in the instant case,

Mediator's Proposal is: 1) prepared by the Mediator; 2) conveyed to each Party in writing by the

Mediator as a full and final resolution of the disputed claims; 3) presented to each Party

separately; and 4) the Parties then notify the Mediator whether they accept or reject the terms.  If

all Parties accept the terms, the matter is resolved on the terms proposed.  If the Parties reject the

terms, there is no settlement and the dispute continues.

49.     The Parties ultimately agreed to the Mediator's Proposal.  The Parties entered into

the following written agreement, which is attached as Exhibit A ("the settlement agreement"):

> Thank you for agreeing to entertain a Mediator's proposal based
> on our discussions today.  Please reply to me only, and of course,
> I will keep your response confidential unless we have an
> agreement.  I am including only the monetary terms here, all other
> terms to be negotiated and memorialized in a long form settlement
> + release.

---

[1] The McCammon Group serves the DC, MD and VA area and "is comprised of retired judges and prominent attorneys, providing the highest caliber dispute resolution services." https://www.mccammongroup.com/neutrals/. "The McCammon Group has mediated more than 20,000 cases resulting in a mediation settlement rate of approximately 85%."  https://www.mccammongroup.com/services/civil-dispute-mediation/.

Here is my proposal:

Δs to pay to πs a total of $3,600,000
in exchange for a full release.

_____ Accept
_____ Reject

50.     All Parties accepted this proposal, the Plaintiffs by making a checkmark on the

"Accept" line, and the General Counsel of FHLBSF on behalf of and with the full authority of all

Defendants, by making a checkmark on the "Accept" line for "Δs," with the addition of her

signature.  Ex. A.

51.     Prior to accepting the Mediator's Proposal, the Parties had agreed that any written

agreement reached at mediation would resolve the dispute.  Per the Agreement to Mediate signed

before Mediation and on the day of Mediation, the Parties Agreed that, "if the parties do reach a

settlement and execute a written agreement disposing of the dispute, the agreement is

enforceable in the same manner as any other written contract."

52.     The parties agreed upon the essential terms, on October 8, 2018, and began

communications to formalize a long-form document.

53.     In order to enter into mediation, the Defendants requested that Mr. Parks and Mr.

Simons not file the Complaint.  Because of that request, Mr. Parks and Mr. Simons did not file

the Complaint in the Summer or the Fall of 2018.

54.     Here, the settlement agreement, Exhibit A, clearly indicates that both parties

intended for Mr. Parks and Mr. Simons to execute a full release of claims in exchange for the

Defendants' payment to them of $3.6 million.

55.     Both parties were represented by counsel and were free to reject the proposed

settlement, but marked "Accept" to the mediator's proposal.

56.     Both the monetary sum and the nature of the release (a "full release") were specified in the agreement, and the terms were disclosed to both parties in accordance with an agreement having been struck.

57.     At no point during the subsequent negotiations has either party disputed the fundamental terms of the agreement, namely that $3.6 million will be paid to the Plaintiffs and that the Plaintiffs will fully release the Defendants from all claims they have against them.

58.     The Parties have nonetheless been unable to finalize and execute a long-form settlement agreement as of the date of this filing, despite several months-long effort by the Plaintiffs to finalize an agreement.

59.     Defendants have sought to add terms which would materially alter (and effectively nullify) the agreement struck at mediation, including, for a period of time, an attempt to extend the payment period over ten years, which would guarantee that the Plaintiffs receive less than the $3.6 million agreed to in settlement for the discrimination and retaliation they suffered.  To include a clawback provision that would provide the Defendants broad discretion to clawback funds without due process being afforded to Mr. Parks or Mr. Simons and in some instances, in the sole discretion of the FHLBSF; by making the clawback retroactive over months, and by attempting to withhold funds if Mr. Parks or Mr. Simons ever asserted their Fifth Amendment rights.

60.     Defendants have also sought to include multiple years long  provision requiring Mr. Parks and Mr. Simons to agree they: "will not work in any capacity (as an individual, or as an owner, employee, consultant, contractor, officer, director, investor, agent, for any entity, or otherwise) to, directly or indirectly, publicly, or privately, advocate for, communicate on, or provide any other person or entity with any assistance related to directly, or indirectly, amending,

changing or repealing . . ." specific legislation impacting the FHLBSF and the housing finance

industry. . . . or "any other federal law or state law that impacts, or *could* impact, the operations

of FHLBSF (collectively "FHLBSF Matters")." (Emphasis added).   The Defendants' requested

duration for this provision is six (6) years and four (4) years respectively (during the discussions,

Defendants even demanded this time period be ten (10) years for both Mr. Parks and Mr.

Simons).

61.     The Parties agreed to settle the disputed claims between them on October 8, 2018,

but then acted in a manner to ensure Mr. Parks and Mr. Simons would never receive their money.

The Defendants are required by law to fulfill their obligations under that agreement as agreed.

62.     Defendants' attempt to materially alter the agreement in the months following

mediation constitutes a breach of the settlement.

## <u>COUNT ONE - BREACH OF CONTRACT</u>

63.     The allegations of the foregoing paragraphs are incorporated in this count as if

they were repeated here in full.

64.     The settlement agreement (Exhibit A, incorporated herein) sets forth the terms of

the agreement reached by the Parties during mediation with Judge Williams on October 8, 2018.

65.     The settlement agreement was accepted by Plaintiffs' checkmark on the "Accept"

line, and the General Counsel of FHLBSF on behalf of and with the full authority of all

Defendants, by making a checkmark on the "Accept" line for "Δs," with the addition of her

signature.  Ex. A.

66.     The parties then agreed upon the essential terms on October 8, 2018, and began

communications to formalize a long-form document.

67.     The settlement agreement, Exhibit A, constitutes a contract between Plaintiffs and Defendants.

68.     Defendants breached the contract by failing to pay $3.6 million to the Plaintiffs in exchange for Plaintiffs' full release of the Defendants from all claims they have against them. Instead, Defendants' attempted to materially alter the essential terms of payment in the weeks following their acceptance of the contract.

69.     As a direct and proximate result of the breach by Defendants, Mr. Parks and Mr. Simons have suffered and continue to suffer damages including the specific amounts due as set forth above, loss of use of income; loss of opportunities and benefits; and other past and future pecuniary losses.

**COUNT TWO –**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Pleading in the Alternative)**

70.     The foregoing allegations are incorporated as if realleged herein.

71.     The Defendants possessed a duty of good faith and fair dealing contracting with Mr. Parks and Mr. Simons by agreeing to the Mediator's Proposal and entering into the Settlement Agreement, regarding the payment of the $3.6 million in exchange for a full release, as set forth in ¶¶ 50 and 51 above.

72.     The Defendants breached their duty of good faith and fair dealing as set forth in detail throughout this Complaint, including but not limited to, seeking to add terms which would materially alter (and effectively nullify) the agreement struck at mediation, including an attempt to extend the payment period over multiple years, which would guarantee that the Plaintiffs receive less than the $3.6 million agreed to in settlement for the discrimination and retaliation they suffered, to restrict their ability to work for ten (10) years at first – and later six (6) years

and four (4) years, and to include a clawback provision that would allow the Defendants broad discretion to clawback funds even before due process is afforded to Mr. Parks and Mr. Simons, and in demanding years long non-compete restrictions, among other terms.

73.     Defendants acted in bad faith and with the intent to ensure Mr. Parks and Mr. Simons could not agree to their  new conditions by inserting terms that would alter the deal, and, in some instances ensure they never saw the funds.

74.     As a direct and proximate result of the breach by Defendants, Mr. Parks and Mr. Simons have suffered and continue to suffer damages including the specific amounts due as set forth above, loss of use of income; loss of opportunities and benefits; and other past and future pecuniary losses.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs LAWRENCE H. PARKS and TIMOTHY L. SIMONS, jointly and severally, hereby request that this Court enter judgment in their favor and against Defendants FEDERAL HOME LOAN BANK OF SAN FRANCISCO, GREG SEIBLY, DWIGHT ALEXANDER, JULIA YOUNG, JOHN F. (Jack) LUIKART, BRIAN M. RILEY, JEFFREY K. BALL, BRADLEY W. BEAL, CRAIG G. BLUNDEN, MARANGAL (Marito) DOMINGO, MELINDA GUZMAN, SIMONE LAGOMARSINO, KEVIN MURRAY, ROBERT F. NIELSEN, JOAN OPP, JOHN F. ROBINSON, F. DANIEL SICILIANO, SCOTT C. SYPHAX and JOHN T. WASLE, and to act further as follows:

(a)     Award Plaintiffs compensatory damages, plus demonstrated past and future pecuniary damages on the above-stated Counts, not to exceed $ 3.6 million; and in addition

(b)    Award Plaintiffs compensatory damages, including pre-judgment interest on the above stated Counts; and in addition

(c)    Award Plaintiffs attorneys' fees and the costs of this action; and in addition

(d)    Award Plaintiffs such other and further relief as may be appropriate.

## **JURY DEMAND**

**PLAINTIFF LAWRENCE H. PARKS and TIMOTHY L. SIMONS DEMAND A TRIAL BY JURY.**

March 28, 2019                Respectfully submitted,

_____
Carla D. Brown, D.C. Bar No. 474097
cbrown@cbcblaw.com
Daphne Shih Gebauer, D.C. Bar No. 982568
dgebauer@cbcblaw.com
CHARLSON BREDEHOFT
  COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiffs,*
  *Lawrence H. Parks and Timothy L. Simons*