UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE PARKS, *et al.*,<br><br>    **Plaintiffs**,<br><br>            v.<br><br>FEDERAL HOME LOAN BANK OF SAN FRANCISCO, *et al.*,<br><br>    **Defendants.** | Civil Action No. 19-883 (JEB) |

**MEMORANDUM OPINION**

    Plaintiffs Lawrence Parks and Timothy Simons worked as executives for the Federal Home Loan Bank of San Francisco for a number of years. Although FHLBSF is a West Coast bank, Plaintiffs were based out of its D.C. office. After their relationship with the Bank soured, its Board of Directors approved the decision to terminate Plaintiffs' positions. Parks and Simons did not go gently into that good night; instead, they engaged counsel and threatened to sue their former employer for ill treatment. In an attempt to avoid prolonged legal wrangling, the parties pursued mediation. What happened there brings us here today: Plaintiffs believe the parties reached a binding settlement agreement; Defendants contend they never got that far.

    To enforce the purported agreement, Plaintiffs sued the Bank, three of its Officers, and its fifteen Directors, alleging breach-of-contract claims. In two separate Motions, Defendants now move to dismiss for lack of personal jurisdiction and failure to state a claim. Agreeing with the Directors and Officers, the Court will dismiss the case against them. As for the Bank, the Court is unpersuaded and will deny its Motion.

1

## I. Background

As it must at this juncture, the Court draws the facts from the Complaint. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). This story begins in 1997, when FHLBSF recruited Parks to spearhead an important initiative. See Compl., ¶¶ 32, 34. At that time, the Bank was in the process of establishing a Legislative and Regulatory Affairs Division. Id., ¶¶ 2, 32. True to its name, the LRA monitors and influences legislative and regulatory developments in the federal government. Id., ¶ 38. Perhaps not so surprisingly, then, the Bank chose to open its LRA office in the nation's capital, and it selected Parks to helm that office. Id., ¶ 2. Some seven years after breaking ground, the Bank hired Simons to serve alongside Parks. Id., ¶¶ 35–37.

Through their efforts over the years, Plaintiffs helped the LRA division become a "source of innovation and brand building" for the Bank. Id., ¶ 40. Yet, for all the division's success, in May 2018, the Bank's Directors approved the decision to close the D.C. office and eliminate Plaintiffs' positions. Id., ¶¶ 42–43. Although the parties spill much ink disputing the Board's reasons for doing so, fortunately for the reader, the Court need not get bogged down in these facts, as they are not relevant to this Opinion.

As the events unfolded, Plaintiffs, with an eye toward potential litigation, engaged counsel, who sent a demand letter to FHLBSF. Id., ¶ 44. In that letter, both Parks and Simons alleged instances of mistreatment at the hands of the Bank, including race discrimination and defamation. Id. Seeking to avoid a lengthy battle in court, FHLBSF suggested that they refrain from filing suit and that the parties instead give mediation a whirl. Id., ¶¶ 44, 46–47. Plaintiffs agreed. Id., ¶ 46. On October 8, the parties met here in Washington with the McCammon Group, a private mediation firm. Id., ¶¶ 46, 61.

At the end of that meeting, the mediator presented the parties with a proposal. Id., ¶ 50. After reviewing it, Plaintiffs and the General Counsel of the Bank expressed their approval. Most relevant here, the proposal contained the following "essential terms": (1) the aggregate amount to be paid to Parks and Simons ($3.6 million) in exchange for (2) a full release of claims against FHLBSF. Id., ¶ 49. As for "all other terms," the parties agreed to take those up at a later time. Id.

In the months that followed, the two sides attempted to formally memorialize the settlement agreement. Id., ¶ 58. No dice. In Plaintiffs' telling, the attempts were unsuccessful because the Bank insisted on adding terms — e.g., structured-payment and clawback provisions — that would materially alter the agreement. Id., ¶¶ 59–60. In doing so, according to Parks and Simons, FHLBSF stonewalled the process and failed to meet its obligations. Id., ¶ 61.

So, on March 28, 2019, Plaintiffs turned to this Court. They brought the present action, asserting two claims against the Bank, three of its Officers, and its fifteen Directors. Id., ¶¶ 4–22. Specifically, they allege that Defendants breached the settlement agreement (Count I) or, in the alternative, breached the covenant of good faith and fair dealing (Count II). Id., ¶¶ 63–74. In separate Motions, Defendants now move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See ECF No. 12 (Bank & Officers' MTD); ECF No. 13 (Directors' MTD); ECF No. 14 (Notice of Joinder by Defendant Dwight Alexander).

Hoping another round of mediation might prove an elixir, this Court held a conference call, see Minute Order of Aug. 29, 2019, and the parties agreed to pursue that course. See ECF No. 33 (Mediation Referral Order). Their efforts, however, met with little success. See ECF No. 37 (Joint Status Report of Dec. 31, 2019). Given the current stalemate, the Court must now resolve the pending Motions.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over it. The plaintiff bears the burden of establishing personal jurisdiction, see FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008), and the requirements "must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980). In deciding whether a plaintiff has shown a factual basis for personal jurisdiction over a defendant, a court resolves factual discrepancies in favor of the plaintiff. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing. Id.

Federal Rule of Civil Procedure 12(b)(6), in turn, provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts in the complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff to

4

survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Even at the Rule 12(b)(6) stage, a court can review "documents attached as exhibits or incorporated by reference in the complaint." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.").

## III. Analysis

As set out above, the Bank, its Officers, and its Directors have moved to dismiss for want of personal jurisdiction and failure to state a claim. For ease of analysis, the Court will address each set of Defendants in turn, looking first at jurisdictional issues and then at the merits of Plaintiffs' allegations.

### A. Directors

#### 1. *Jurisdiction*

Under the Federal Rules, a district court typically exercises personal jurisdiction according to the law of the state in which it sits — here, the District of Columbia. See Fed. R. Civ. P. 4(k)(1)(A); United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995). Personal jurisdiction may take the form of general or specific jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Plaintiffs here invoke only the latter. See ECF No. 20 (Pl. Opp. to Directors' MTD) at 7.

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop, 564 U.S. at 919 (citation and internal quotation marks omitted). Put differently, specific jurisdiction exists where

5

a claim arises out of a non-resident defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.408, 414 n.8 (1984); Ferrara, 54 F.3d at 828. "A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute and does not violate due process." FC Inv. Grp., 529 F.3d at 1094–95 (citations omitted).

The District's long-arm statute sets forth several possible routes for personal jurisdiction. See D.C. Code § 13-423(a). Plaintiffs here invoke only one: a claim arising from the Directors' "transacting any business in the District of Columbia." Id. § 13-423(a)(1); see Pl. Opp. to Directors' MTD at 7. This provision has been held to be "coextensive with the due process clause." Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C. 1981) (*en banc*)). The question, therefore, is whether Plaintiffs' claims "arise out of or relate to" the Directors' conduct in this city. See Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1786 (2017) (quoting Helicopteros, 466 U.S. at 414).

A look at the pleadings makes clear that the answer is no. The theory underlying the suit is that Defendants have breached both the express and the implied terms of the settlement agreement with D.C.-based Plaintiffs. See Compl., ¶¶ 63–74. The Complaint, however, fails to allege that the Directors had any contacts with the District relating to these claims. See Goodyear Dunlop, 564 U.S. at 919. Instead, Parks and Simons offer only the conclusory allegation that "the parties entered into voluntary mediation." Compl., ¶ 46. Missing from their Complaint are factual allegations that any Director attended the mediation, signed the mediator's proposal, or engaged in settlement negotiations with Plaintiffs. See Pl. Opp. to Directors' MTD, Exh. 7 (Agreement to Mediate) (not a single director attended mediation). Of course, because

6

this suit relates only to the mediation, the Directors' other contacts with Parks and Simons in D.C. are irrelevant.

Grasping at straws, Plaintiffs maintain that the Directors retained D.C.-based counsel to represent their interests in the mediation, thereby availing themselves of the benefits and protections of laws in this jurisdiction. Id. at 9–10. On this score, they rely on several cases establishing that the absence of physical presence does not destroy jurisdiction. Id. True enough. But merely hiring a lawyer to defend a case in the District cannot establish jurisdiction here; were it otherwise, a plaintiff could "trap a defendant into minimum contacts simply by luring him into hiring local counsel." Staton v. Looney, 704 F. Supp. 303, 304 (D.D.C. 1989).

2. *Merits*

Even if jurisdiction existed, the Directors contend that Plaintiffs have not properly alleged their two contract claims. See Pl. Opp. to Directors' MTD at 12–14. Before reaching the specifics of their argument, the Court begins with a brief legal overview.

Both parties reasonably presume that D.C. law governs these claims, which lead the Court will follow. Under such law, settlement agreements are construed under general principles of contract law. See Brown v. Brown, 343 A.2d 59, 61 (D.C. 1975). To state a claim for breach of contract, Plaintiffs must allege: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Brown v. Sessoms, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009)). A valid and enforceable contract, moreover, requires both: (1) "intention of the parties to be bound"; and (2) "agreement as to all material terms." Georgetown Entm't Corp. v. Dist. of Columbia, 496 A.2d 587, 590 (D.C. 1985).

7

Further, under District law, a covenant of good faith and fair dealing is implied in every contract. See Brown, 774 F.3d at 1025. This duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 321 (D.C. 2008) (quoting Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006)). To that end, a party breaches this covenant if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000). Plaintiffs claiming a breach of the covenant "must allege either bad faith or conduct that is arbitrary and capricious." Wright v. Howard Univ., 60 A.3d 749, 754 (D.C. 2013).

The Directors lead off by challenging the validity of the settlement agreement, pointing out the absence of all material terms. See Directors' MTD at 14–15. The Court will look at this later, see *infra* Section III.C.2, but for now, even if a valid contract exists, Plaintiffs would still come up empty on the merits.

Crucially, as the Directors correctly point out, the Complaint does not allege that the Board or any Director even entered into the settlement agreement. See Directors' MTD at 15. To be sure, Parks and Simons assert that FHLBSF's General Counsel accepted the proposal "on behalf and with the full authority of all Defendants." Compl., ¶¶ 50, 65. The Complaint, however, alleges no facts to support this conclusion. See Trudeau, 456 F.3d at 193. Perhaps seeking to paper over this hole, Plaintiffs note that the mediator's proposal would have benefited the Board by virtue of the full-release provision. See Pl. Opp. to Directors' MTD at 14. This is irrelevant; that the Directors stand to gain from the settlement agreement does not mean that they entered into a contract with Plaintiffs. See Motorsport Eng'g, Inc. v. Maserati SPA, 316 F.3d 26,

29 (1st Cir. 2002) (recognizing that "[a] third-party beneficiary is one who is given rights under a contract to which that person is not a party"). In short, any way Plaintiffs slice it, the Directors are not a party to the settlement agreement.

Because it is axiomatic that a contract cannot bind a non-party, see Charlton v. Mond, 987 A.2d 436, 441 (D.C. 2010), the Directors could not have breached the settlement agreement, much less any covenant of good faith and fair dealing. See Guttenberg v. Emery, 41 F. Supp. 3d 61, 68 (D.D.C. 2014). The Court will therefore dismiss the two counts against the Directors.

### B. Officers

Next up are FHLBSF's three Officer Defendants: Greg Seibly (President and CEO), Dwight Alexander (Senior Vice President of the LRA division), and Julia Young (Managing Director and Associate General Counsel). See Compl., ¶¶ 5–7; Bank & Officers' MTD, Exhs. 1–3 (Declarations of Seibly, Alexander, and Young).

#### 1. *Jurisdiction*

Plaintiffs maintain that specific jurisdiction exists over this trio, once again invoking the transacting-business provision of the District's long-arm statute. See D.C. Code § 13-423(a)(1); Pl. Opp. to Bank & Officers' MTD at 20. As mentioned above, the touchstone for such specific jurisdiction is whether a defendant's contacts with the forum have a sufficient connection to the claim at issue. See Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 43 (D.D.C. 2003).

Unlike the Directors, Seibly and Young did attend and participate in the mediation giving rise to the dispute. See Bank & Officers' MTD, Seibly Decl., ¶ 10, Young Decl., ¶ 11. Alexander did not. In the end, this makes little difference; even if Plaintiffs had alleged that every Officer Defendant participated in the mediation, the Court could not exercise specific jurisdiction over any of them.

9

At the outset, "as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation.'" Kopff v. Battaglia, 425 F. Supp. 2d 76, 84 (D.D.C. 2006) (quoting Flocco v. State Farm Mutual Auto. Ins. Co., 752 A.2d 147, 162 (D.C. 2000)). As such, this Court must find jurisdiction for each individual Officer, separate and apart from the Bank.

It cannot, as a result of the corporate-shield doctrine. This equitable doctrine counsels that "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." Wiggins v. Equifax Inc., 853 F. Supp. 500, 503 (D.D.C. 1994). Put otherwise, when a defendant's contacts with the forum exclusively relate to his corporate responsibilities, he is "clearly not 'doing business' with the District." Id.; see Richard v. Bell Atlantic Corp., 976 F. Supp. 40, 50 (D.D.C. 1997).

So it is here. Because Seibly and Young participated in the mediation in their corporate capacities only, their acts cannot be used to establish personal jurisdiction over them. See D'Onofrio v. SFX Sports Grp., Inc., 534 F. Supp. 2d 86, 91–92 (D.D.C. 2008). It necessarily follows that personal jurisdiction is also lacking with respect to Alexander, who did not participate in the mediation at all. Telling on this front is the fact that Plaintiffs do not challenge the Officers' invocation of the corporate-shield doctrine. See Pl. Opp. to Bank & Officers' MTD at 19–29.

   2. *Merits*

Even were jurisdiction proper, the Officers contend that dismissal is appropriate because they are not parties to any settlement agreement. See Bank & Officers' MTD at 31–33. As non-parties, the argument goes, they cannot breach the terms of the contract, either express or

implied. Id. The Court concurs. The Bank was the only Defendant that signed the agreement. See Compl., ¶ 50, Exh. A (Settlement Agreement). As a result, the Officers did not take on any personal obligations under its terms, even though Seibly and Young participated in the mediation. See Jones v. Quintana, 872 F. Supp. 2d 48, 57–58 (D.D.C. 2012); Bank & Officers' MTD at 33. The Court, accordingly, will dismiss the claims against them.

   C. FHLBSF

      1. *Jurisdiction*

To establish personal jurisdiction over the Bank itself, Plaintiffs once again look to D.C.'s transacting-business provision. See D.C. Code § 13–423(a)(1); Pl. Opp. to Bank & Officers' MTD at 20. This time, Plaintiffs are on firmer ground, as they plainly assert factual allegations tying their claims to FHLBSF's contacts with the District. They allege, to wit, that the Bank negotiated and signed the settlement agreement here. See Compl., ¶¶ 26, 48–50. The Bank does not deny this, see Bank & Officers' MTD at 27, instead pointing out that other courts have recognized that merely participating in a mediation does not establish personal jurisdiction. See ECF No. 25 (Bank's Reply) at 11 (citing Lan v. Adduci Mastriani & Schaumberg LLP, 786 F. Supp. 2d 240 (D.D.C. 2011), and Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F. Supp. 2d 1011 (D. Kan. 2006)). There appears to be a split in authority on this question. Compare Queens Syndicate Co. v. Herman, 691 F. Supp. 2d 283, 287 (D. Mass. 2010) (finding no practical unfairness to subjecting party to personal jurisdiction when he, *inter alia*, knowingly and intelligently participated in mediation) with Lan, 786 F. Supp. 2d at 275 ("participation in litigation-related activities alone does not subject [defendants] to personal jurisdiction"); Sunlight Saunas, 427 F. Supp. 2d at 1015 (defendant could still object to jurisdiction despite its prior participation in litigation-related activities, including mediation). In any event, none of

11

these cases holds that a court cannot exercise jurisdiction over an entity where the underlying dispute arises from the mediation itself. Further, unlike individual defendants, the Bank here cannot take refuge behind the corporate-shield doctrine. See Battaglia, 425 F. Supp. 2d at 84.

In brief, the Bank's contacts are extensive enough that it should have reasonably anticipated being haled into a D.C. court for issues relating to the settlement agreement itself. The Court thus concludes that specific jurisdiction is proper.

2. *Merits*

The Bank next attacks the validity of the settlement agreement. See Bank & Officers' MTD at 34–37; Bank's Reply at 13–16. Given that no agreement was actually reached, FHLBSF maintains, Plaintiffs cannot assert a claim for breach of such agreement or its implied covenants. See Bank & Officers' MTD at 34–37.

Readers might recall that a valid contact requires both "agreement as to all material terms" and "an intention of the parties to be bound." Georgetown Entm't, 496 A.2d at 590. FHLBSF argues that neither of those requirements has been met here. On the latter, the Bank posits that the absence of a written long-form agreement shows that the parties had no intention to be bound. See Bank & Officers' MTD at 36. As to the inclusion of all material terms, FHLBSF points to the following language in the proposal: "[The Mediator is] including only the monetary terms here, all other terms to be negotiated and memorialized in a long form settlement + release." Compl., ¶ 49 (emphasis added). In the Bank's view, this language demonstrates that the proposal did not define all material terms, as the specific language of the release, the duration of the period for payment, and any other provisions required under the appropriate banking regulations are all missing. See Bank & Officers' MTD at 35–36. The agreement's

12

incompleteness is further evidenced by the parties' failure to allocate the settlement payment between the two Plaintiffs. Id. at 13.

Although FHLBSF raises compelling arguments, which may indeed prevail at summary judgment, the Court cannot dismiss these two claims yet. At this stage, Plaintiffs are entitled to all inferences that can be derived from the Complaint. See Sparrow, 216 F.3d at 1113. There, they alleged that the settlement agreement does include all material terms — namely, payment to Parks and Simons in exchange for a full release. See Compl., ¶ 52. That the parties agreed to negotiate "all other terms" does not mean that such terms were necessarily material to the agreement. See, e.g., Blackstone v. Brink, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) ("In the context of settlement agreements, court[s] have found that the amount to be paid and the claimant's release of liability are the material terms."). Further, the anticipation of a more formal future writing does not nullify an otherwise binding agreement. See United House of Prayer for All People v. Therrien Waddell, Inc., 112 A.3d 330, 338–39 (D.C. 2015).

At summary judgment, FHLBSF may introduce evidence to show that the proposal did not contain several material terms and that there was no meeting of the minds. For now, however, Plaintiffs have alleged sufficient facts — if just barely — to state their two contract claims against the Bank.

**IV.     Conclusion**

For these reasons, the Court will grant the Directors' Motion to Dismiss and will grant in part and deny in part the Bank and Officers' Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

13

Date: <u>January 27, 2020</u>